In the Matter of the ESTATE OF Pauline RONDINELLI, Deceased.

Josephine DOLATOWSKI; Frank A. Rondinelli, Jr.; Anthony Rondinelli; Paula Ebersberger; and JoEllyn Hastis, as Heirs of the Estate of Pauline Rondinelli, Deceased, Appellants,

v.

The ESTATE OF Pauline RONDINELLI, Deceased, Appellee.

No. 45A03–9607–CV–248.

Court of Appeals of Indiana.

March 16, 1998.

James A. Greco, Greco Pera & Bishop, Merrillville, for Appellants.

Ronald F. Layer, James M. Kapitan, Sachs & Hess, Hammond, for Appellee.

## OPINION

HOFFMAN, Judge.

Appellants-defendants Josephine Dolatowski, Frank Rondinelli, Jr., Anthony Rondinelli, Paula Ebersberger, and JoEllyn Hastis, the heirs of Pauline Rondinelli's estate (collectively referred to hereinafter as "Heirs"), appeal the trial court's order in favor of the Estate of Pauline Rondinelli.

The facts relevant to the appeal reveal that on September 23, 1983, Pauline Rondinelli ("Pauline") executed a last will and testament which was witnessed by Thomas Puchinski and Diane Suirch. Pauline died testate July 12, 1989. She was survived by her adult children, Anthony Rondinelli, Frank Rondinelli, Jr., Barbara Drakis, Josephine Dolatowski, and Pauline Layer, and several grandchildren and great grandchildren. At the time of her death, Pauline's personal property consisted of a stamp collection, furniture, household items, jewelry, stock, and a cash management account (CMA) containing approximately $69,000.

Shortly before she died, Pauline, in a letter, authorized the transfer of her stock as well as the transfer of the $69,000 in the CMA to Josephine Dolatowski's account. Thereafter, Josephine Dolatowski executed a promissory note and distributed the note to immediate family members. The promissory note read as follows:

FOR VALUE RECEIVED, I, we, and each of us, jointly and severally, promise to pay to PAULINE RONDINELLI, the sum of SEVENTY-EIGHT THOUSAND ($78,000.00) DOLLARS, together with interest at the rate of ten percent (10%) per annum, payable monthly, commencing September 1, 1989, without relief from valuation or appraisement laws.

In execution of this note, it is understood that in the event of the demise of the bearer, PAULINE RONDINELLI, the remaining principal balance will become payable in full within one year from the date of said demise, to Anthony Rondinelli, Frank A. Rondinelli, Jr., Barbara Drakis, Josephine E. Dolatowski, and Pauline Layer.

IN WITNESS WHEREOF, we, and each of us, have hereunto set our hands and seals at Merrillville, Indiana, on May 19, 1989.

/s/ John E. Dolatowski

/s/ Josephine E. Dolatowski

Josephine Dolatowski then wrote four checks on the account, each in the amount of $12,-

844.38, and distributed the checks to Anthony Rondinelli, Frank Rondinelli, Barbara Drakis, and Pauline Layer.[1]

On April 6, 1990, Barbara Drakis, as personal representative and attorney for Pauline's estate, filed a petition for probate of Pauline's will and issuance of letters testamentary. The will was admitted to probate in the Probate Division of the Lake Superior Court the same day. Ronald Layer, son-in-law of Pauline, entered his appearance as attorney for his wife, Pauline Layer, and his two daughters, Lisa and Michelle Layer. Thereafter, Josephine Dolatowski, as well as Frank Rondinelli, Anthony Rondinelli, Paula Ebersberger, and JoEllyn Hastis, each pro se, filed various pleadings challenging the trial court's order admitting Pauline's will to probate and contesting the validity of the will.

Between April 6, 1990 and July 16, 1993, various pleadings were filed by all the parties to the matter. On July 16, 1993, after reviewing the evidence of record, the trial court entered the following order which states in pertinent part:

> After reviewing the records of this proceeding, the Court finds that both prior and subsequent to the death of Pauline Rondinelli, her affairs were mishandled by all Parties who came in contact with them. Action taken by certain parties showed a total disregard for the law and the proper handling of the decedent's affairs. By their action, certain interested parties intermeddled with and converted certain of the assets of the decedent. The record further discloses that the Personal Representative failed to take prompt and definitive action to protect the decedent's assets as she was required to do by law. Had this been done, possibly this Estate proceeding might not have been as complicated as it is now. However dilatory she may have been, this offers no excuse or justification for others improperly taking over the handling and administering of the decedent's affairs without court approval. There is a proper way to handle such matters, and this was ignored.

> As a result of this improper and unlawful intervention, and the failure to promptly administer the decedent's affairs, the Estate had no choice but to proceed in an aggressive manner to regain control of the decedent's affairs. At each step, the Personal Representative has met with resistance as she has finally attempted to perform her duties, as required by law.

> * * *

> NOW, THEREFORE, IT IS ORDERED BY THIS COURT THAT:

> 1. The funds borrowed from the decedent by Josephine Dolatowski and John Dolatowski, and unpaid at decedent's death, are an asset of decedent's estate. The distribution of these funds by Josephine Dolatowski is an act of intermeddling with and conversion of estate assets. The recipients of these distributions are ordered to return the share of these funds they have received to the Personal Representative, instanter.

> 2. All personal property taken from the decedent's residence prior to her death during her final illness, or after her death, shall be returned to the Personal Representative, instanter. In the alternative, the party having removed any such property, or who had received such property, that is incapable of being returned as ordered, shall pay the fair market value of such property as of the date of its removal to the Personal Representative, instanter.

> 3. Fees are awarded as follows:

> * * *

> C. Ronald Layer is awarded Attorney fees in the amounts as follows:

> a. $945.00, which fees are assessed against Josephine Dolatowski;

> b. $500.00, which fees are assessed against Josephine Dolatowski, Anthony Rondinelli, Frank A. Rondinelli, Jr., Paula Ebersberger and Jo Ellyn [sic] Hastis, jointly and severally;

> c. The issue of the additional fee request for services rendered by Attorney Ronald Layer is held under advisement.

---

**1.** Barbara Drakis and Pauline Layer later returned their checks to the Estate.

When the Heirs refused to comply with the July 16th order, Ronald Layer, at Barbara Drakis' request, entered his appearance as co-counsel for the Estate for the purpose of aiding in the enforcing of the order. Thereafter, the Heirs, each *pro se*, filed various pleadings challenging the trial court's July 16th order, as well as a petition for the removal of Ronald Layer as co-counsel for the Estate. In an August 24, 1994 order, the trial court, *inter alia*, dismissed the petition for the removal of Ronald Layer as co-counsel for the Estate, awarded Ronald Layer additional attorney's fees against the Heirs, and found the Heirs to be in contempt of court for failing to comply with the July 16, 1993 order.

Thereafter, the Heirs filed various pleadings asking for relief from the July 16th and August 24th orders, for the removal of Barbara Drakis as personal representative and attorney for the Estate on grounds that she was not licensed to practice law in the state of Indiana, and the removal of Ronald Layer as co-counsel for the Estate. A hearing was eventually set for January 24, 1996, at which all pending matters would be decided. During the hearing, no direct testimony was given or evidence introduced; instead, each party was given an opportunity to state his or her respective position. Following the hearing, the trial court took the pending matters under advisement, and on April 24, 1996, the trial court issued a written order reaffirming all of the "money judgments previously entered by the Court in 1993 and 1994" and giving the judgments "the full force and effect of the law." The Heirs now appeal the trial court's decision. Additional facts will be provided as necessary.

Two issues are presented for our review which we restate as follows:

(1) whether the trial court erred in determining that there was sufficient evidence to establish that Barbara Drakis, personal representative and attorney for the Estate of Pauline Rondinelli, was licensed to practice in the state of Indiana; and

(2) whether Ronald Layer's representation of both the Estate and his wife and daughters, as heirs to the Estate, created a conflict of interest.

The Heirs first argue that the trial court erred in determining that Barbara Drakis was licensed to practice law in Indiana and was in good standing with our supreme court. The Heirs specifically argue that the trial court abused its discretion in denying their motion for relief from the previous judgments, entered on July 16th and August 24th, because the motion was filed on the grounds that the judgments were obtained by an unlicensed attorney and were, therefore, void.

 This Court has held that only persons duly admitted to practice law in this state may appear on behalf of other persons. *Butler v. State*, 668 N.E.2d 266, 268 (Ind.Ct. App.1996). Where a legal proceeding has been instituted on behalf of another in a court of record by one not licensed to practice law, the action should be dismissed, and if the suit has proceeded to judgment, the judgment is void. *Id.*

 The evidence of record reveals that Drakis was admitted to practice law in Indiana in 1953 under the name of Barbara Rondinelli. When she married and became Barbara Drakis, she practiced law on a part-time basis until late 1976 or early 1977, at which time she ceased practicing law. Sometime during the time that Drakis was retired from the practice of law, our supreme court instituted continuing legal education requirements. However, because the Supreme Court's Clerk's office did not have a current address for Drakis, Drakis was not informed of the new requirements.

The Heirs' argument that Drakis is not an attorney in good standing appears to stem from a letter Josephine Dolatowski received from the Indiana Disciplinary Commission of the Supreme Court in response to a grievance she filed with the office. In the letter, Donald R. Lundberg, Executive Secretary of the Disciplinary Commission, wrote:

Enclosed is your complaint against Barbara Drakis. In checking with the Clerk of the Supreme Court and the Board of Law Examiners, we were informed that there is no lawyer by that name licensed to

practice law in the State of Indiana. Therefore, this office is unable to process your grievance.

Based upon the letter, the Heirs filed a motion for relief from judgment alleging, *inter alia*, that Drakis was not a licensed attorney.

Upon learning that there was a possibility that she was not in good standing, Drakis immediately filed a petition to withdraw as attorney for the Estate. The petition, however, was denied because it was not timely filed. Nevertheless, Drakis went through the process of updating her license, and approximately two months later, Drakis re-entered her appearance as attorney for the Estate which was approved by the trial court.

The Heirs filed their motion for relief from the judgments on October 24, 1995. After the hearing was held, on January 24, 1996, Layer filed a responsive memorandum with an attached affidavit from the Supreme Court Clerk's office.

The affidavit was from an employee of the Indiana State Supreme Court who at the time maintained the Roll of Attorneys for the Clerk of the Supreme Court. In her affidavit, the employee stated that:

as an employee of the Supreme Court, I can state that it is the position of the Supreme Court, which has been confirmed with the Disciplinary Commission of the Indiana State Supreme Court, that Barbara Drakis, Atty. No. 18992–45–A, is now and has been since she was admitted in 1953, in good standing with the Indiana State Supreme Court.

4. Barbara Drakis has never been suspended or disbarred or unlicensed to practice law in the State of Indiana since her admission.

5. Mrs. Drakis, because of her inactive practice for a number of years, did not get put in the computer roll of attorneys and, therefore, did not get assigned an attorney number until recently, which has led to the recent confusion.

The supreme court employee's affidavit makes clear that Drakis has remained in good standing with our supreme court since her admission in 1953. As such, because Drakis was permitted to serve as attorney for the Estate, any and all judgments have the full force and effect of the law. Therefore, the trial court did not err in reaffirming the 1993 and 1994 judgments and denying the Heirs' relief from judgment motion.

The Heirs next argue that the trial court abused its discretion in denying their motion for relief from the August 24, 1994 judgment which, *inter alia*, awarded an additional $1000 in attorney's fees to the Estate's co-counsel, Ronald Layer, and against the Heirs. The Heirs argue that the judgment should be voided because it was obtained despite a conflict of interest involving Layer. According to the Heirs, the conflict of interest occurred when Layer, who was representing the interests of his wife and daughters as heirs to the Estate, entered an appearance on behalf of the Estate for the purpose of aiding in the enforcement of the July 16th order.

The Heirs maintain that Layer's multiple representation, which was done without the consent of all of the parties, was in direct violation of Ind.Professional Conduct Rule 1.7 which states in pertinent part:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The principles of Prof.Cond.R. 1.7 determine whether an impermissible conflict of interest exists. Relevant factors to be considered in this assessment include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise, and the likely prejudice to the client if conflict does arise. *Comment* to Prof.Cond.R. 1.7. The question often is one of proximity and degree. *Id.*

In the instant case, Layer represented his wife and two daughters as heirs to the Estate. The relationship between an attorney and his client once established must be one of mutual trust and confidence so that the client's best interests are served. *Bailey v. Martz,* 488 N.E.2d 716, 724 (Ind.Ct.App. 1986), *trans. denied.* Accordingly, once Layer established this attorney-client relationship with his wife and daughters, he owed his entire devotion to their interests. *See id.*

In his capacity as attorney for his wife and daughters, Layer filed various pleadings in the Estate proceedings to protect their interests. Eventually, the trial court ruled in its July 16th order, *inter alia,* that Josephine Dolatowski intermeddled with the Estate's assets when she borrowed the funds from Pauline, and that the Heirs who received distributions from Josephine Dolatowski were ordered to return the funds to the personal representative of the Estate. When the Heirs failed to comply with the order, Layer entered his appearance to aid in the enforcement of the July 16th order. By entering his appearance, Layer was attempting to aid in the protection of the assets of the Estate. This position was not materially adverse to Layer's wife and daughters' objective of obtaining their respective shares of the Estate as set forth in Pauline's will.

Our supreme court has held that to constitute misconduct, a conflicting interest must be such that it reasonably affects independent judgment. *Matter of Long,* 486 N.E.2d 1031, 1035 (Ind.1986). Here, Layer's appearance as co-counsel for the Estate for the purpose of enforcing the July 16th order was not materially adverse to his representation of his wife and daughters. As such, we find no basis supporting misconduct under Prof. Cond.R. 1.7. The trial court did not err in denying the Heirs motion for relief from the August 24th judgment. The judgment of the trial court is affirmed.

Affirmed.

GARRARD and DARDEN, JJ., concur.