## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2017, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jarrad L. Mastin
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarrad L. Mastin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 31, 2017

Court of Appeals Case No.
18A04-1605-PC-1038

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1302-PC-1

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial in 2011, Jarrad Mastin was convicted of three counts of child molesting, one count as a Class A felony and two counts as Class B felonies. The trial court sentenced Mastin to consecutive sentences of twenty years for each Class B felony conviction and fifty years for his Class A felony conviction, providing for an aggregate sentence of ninety years. On direct appeal, we affirmed his convictions and sentence. *Mastin v. State*, 966 N.E.2d 197, 200 (Ind. Ct. App. 2012), *trans. denied*. Thereafter, Mastin filed a petition for post-conviction relief, which the post-conviction court denied. Mastin, pro se, now appeals the denial of post-conviction relief, raising three issues for our review: (1) whether the post-conviction court erred in concluding Mastin's trial counsel was not ineffective, (2) whether the post-conviction court erred in concluding Mastin's appellate counsel was not ineffective, and (3) whether the post-conviction court erred in denying Mastin's motion for post-conviction evidentiary hearing transcripts. Concluding the post-conviction court did not err in finding Mastin is not entitled to relief on his claims he received ineffective assistance of trial or appellate counsel, nor in denying Mastin's motion for post-conviction evidentiary hearing transcripts, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Mastin's direct appeal:

Mastin's daughter, K.M., was born on July 15, 2004, and placed in the guardianship of her maternal grandmother, Diana Winans ("Winans"). In 2009, K.M. began experiencing severe problems using the bathroom. According to Winans, K.M. was "peeing blood" and screaming, so Winans took K.M. to the hospital.

K.M. was examined and found to have blisters on her labia and rectum. She was originally diagnosed with canker sores; however, test results later confirmed that K.M. had been infected with Type II genital herpes. In an interview with City of Muncie police officers, Mastin confessed to having engaged in sexual contact with K.M.

On January 28, 2010, the State charged Mastin with eight counts of child molesting. Five counts were dismissed and, on July 18, 2011, Mastin was brought to trial before a jury on the remaining three counts (two alleging sexual intercourse and one alleging deviate sexual conduct). He was convicted as charged. On August 30, 2011, Mastin was given consecutive sentences of twenty years for each Class B felony conviction and fifty years for his Class A felony conviction, providing for an aggregate sentence of ninety years. He now appeals.

*Id.* at 200 (citations omitted). We affirmed Mastin's convictions and sentence on direct appeal. *Id.* at 203.

[3] On January 30, 2013, Mastin filed a pro se petition for post-conviction relief and the post-conviction court appointed a State Public Defender to represent him. The State Public Defender later withdrew as counsel after consulting with Mastin and conducting an appropriate investigation into Mastin's claims.

[4] On July 31, 2015, Mastin filed an amended petition for post-conviction relief. In his petition, Mastin raises two claims of error, ineffective assistance of trial counsel and ineffective assistance of appellate counsel. As to appellate counsel, Mastin claims his counsel ineffectively argued his sentence was inappropriate.

Mastin claims his trial counsel was ineffective for failing to communicate guilty plea offers to him. On January 7, 2016, an evidentiary hearing was held at which Jack Quirk, one of Mastin's defense attorneys, testified "Mr. Mastin . . . didn't want to plead guilty, didn't really want to listen to my advice. As I recall, I told him . . . if it went to trial, he would be convicted and he would go to prison for a longer length of time than what was offered." Transcript at 17-18.[1] In addition, Zachary Craig, the deputy prosecuting attorney who handled Mastin's case, testified he faxed at least four guilty plea offers to Mr. Quirk at his office. Each time, Mr. Quirk later responded that he discussed the plea with Mastin who indicated he did not want to plead guilty to child molesting. After Mr. Quirk withdrew, Mr. Craig stated he informed Mastin's new counsel of the status of any plea offer, stating,

> [O]nce [Mr. Rowland] got onto the case, I made, I informed him of the status of any offer, which was the last one submitted to Mr. Quirk on December 1st[, 2010]. I told him that was basically the standing offer. [Mr. Rowland] informed me that he was going to basically take it to [Mastin], see what he wanted to do. By the next pre-trial conference with Mr. Rowland, he informed me that he wasn't going to accept the offer. . . . [O]n the day of trial, that morning before we started jury selection, I approached Mr. Rowland and told him I would be willing to drop both the [Class B felony charges] and allow him to plead to an open [Class A felony]. So that delayed the start of the trial. Mr. Rowland and [Mastin] met in one (1) of the jury rooms . . . for an extended

[1] Prior to Mastin's trial, Mr. Quick withdrew as Mastin's counsel and L. Ross Rowland filed an appearance on his behalf. Mr. Rowland also acted as Mastin's appellate counsel. Mr. Rowland is now deceased and did not testify at the evidentiary hearing.

period of time, at least a half hour. . . . After a period of time,
like I said at least a half hour, [Mr. Rowland] came out . . . [and]
told me [Mastin] didn't want to [plead guilty to the Class A
felony] so we started picking . . . the jury.

*Id.* at 37-38. Following the hearing, the post-conviction court issued its findings of fact and conclusions thereon denying Mastin post-conviction relief. Mastin, pro se, now appeals.

# Discussion and Decision

## I. Post-Conviction Standard of Review

Post-conviction proceedings are not an opportunity for a super-appeal. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* If not raised on direct appeal, a claim of ineffective assistance of counsel is properly presented in a post-conviction proceeding. *Id.* A claim of ineffective assistance of appellate counsel is also an appropriate issue for post-conviction review. *Id.* The petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849

N.E.2d 466, 468 (Ind. 2006). We may not reweigh the evidence or reassess the credibility of the witnesses. *See id.* at 468-69. The post-conviction court's denial of post-conviction relief will be affirmed unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E .2d at 469. Finally, we do not defer to the post-conviction court's legal conclusions, but do accept its factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003).

## II. Ineffective Assistance of Trial Counsel

Mastin contends the post-conviction court erred in concluding his trial counsel did not render effective assistance. Specifically, he contends trial counsel failed to communicate guilty plea offers to him.

To establish ineffective assistance of trial counsel, Mastin must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness

claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[9]     As for the performance component, Mastin must "show[] that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *White v. State*, 25 N.E.3d 107, 132 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 136 S.Ct. 595 (2015). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012); *see also Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015) (holding trial counsel renders ineffective assistance by failing to communicate favorable guilty plea offers).

[10]     To show prejudice from ineffective assistance of counsel where a plea offer has been rejected or lapsed because of counsel's deficient performance, Mastin must demonstrate a "reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 132 S.Ct. at 1409. Mastin must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. *Id.* at 1410.

[11]     As noted above, Mastin alleges no guilty pleas were discussed with him by either Mr. Quirk or Mr. Rowland; therefore, he asserts his counsel's

performance was deficient. We again note it is Mastin's burden to "establish[] his grounds for relief by a preponderance of the evidence[,]" P-C.R. 1(5), and, after reviewing the record, it is clear Mastin has failed to carry his burden. At the post-conviction hearing, Mastin called Mr. Quirk, who served as Mastin's attorney from February 5, 2010 until his withdrawal on March 24, 2011. Although Mr. Quirk could not recall the specific details of any of the guilty plea offers, he was resolute that he spoke with Mastin about the plea offers, stating, "I remember talking to you about plea offers. I remember you were against it and you didn't really like my advice and that's when I decided to withdraw." Tr. at 17. Mr. Quirk's advice included informing Mastin "if it went to trial, he would be convicted and he would go to prison for a longer length of time than what was offered." *Id.* at 18. Further, Mr. Quirk's testimony about Mastin's reluctance to accept any guilty plea was corroborated by the deputy prosecutor, Mr. Craig. Mr. Craig testified after he communicated each offer, Mr. Quirk later responded Mastin rejected the offer and did not wish to enter a plea of guilty. Mr. Craig also testified he made a last-minute guilty plea offer on the morning of trial, as the victim was particularly young and her guardians did not want her to testify. According to Mr. Craig, Mastin and Mr. Rowland discussed the offer for about thirty minutes before Mastin's counsel informed Mr. Craig he rejected the offer.

[12] Mastin's testimony and recollection of events conflicts with that of his former counsel and the deputy prosecutor, as he asserts neither Mr. Quirk nor Mr. Rowland discussed guilty pleas with him. However, the post-conviction court

clearly found Mr. Craig's and Mr. Quirk's testimony that Mastin was informed of all guilty plea offers to be credible and it is not the role of this court to reassess their credibility on appeal. *Hall*, 849 N.E.2d at 468-69. Because the record supports the post-conviction court's determination Mastin was informed of the guilty plea offers made to him, we hold the post-conviction court did not err in concluding Mastin's trial counsel did not render ineffective assistance.[2]

## III. Ineffective Assistance of Appellate Counsel

[13] Mastin also contends the post-conviction court erred in concluding his appellate counsel was not ineffective. Although Mastin's appellate counsel raised the issue of an inappropriate sentence on direct appeal, it appears Mastin now argues his appellate counsel inadequately presented that issue.

[14] The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel in that Mastin must show appellate counsel was deficient in his performance and the deficiency resulted in prejudice. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness . . . ." *McCary*, 761 N.E.2d at 392 (citing

---

[2] Although we need not address the second prong of *Strickland* in light of our conclusion Mastin's trial counsel did not render deficient performance, we nonetheless find Mastin's argument fails because he has not established a "reasonable probability [he] would have accepted the earlier plea offer . . . ." *Frye*, 132 S.Ct. at 1409. At the post-conviction hearing, Mastin testified, "[I]f they would have . . . communicated especially that last plea offer, most likely I would have took [sic] that under some consideration." Tr. at 25. From this statement, we cannot definitively say Mastin would have even *considered* the guilty plea. Therefore, even if we assume his trial counsels' performance was deficient, we conclude Mastin has not established a reasonable probability he would have accepted the guilty plea offers.

*Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). A claim of ineffective assistance resting on appellate counsel's presentation of a claim must overcome the strongest presumption of adequate assistance and relief is only appropriate when the appellate court is confident it would have ruled differently. *Bieghler v. State*, 690 N.E.2d 188, 196 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998).

[15] On direct appeal, Mastin's appellate counsel invoked our authority to review and revise a sentence after consideration of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). We were unpersuaded by his argument and affirmed his sentence. *Mastin*, 966 N.E.2d at 203. Now, the heart of Mastin's argument is his appellate counsel ineffectively argued his sentence was inappropriate by failing to compare and contrast Mastin's own convictions and sentence with that of several cases in which this court or our supreme court has exercised its sentence revision authority. However, we note Mastin failed to provide the post-conviction court with a copy of his direct appeal appellant's brief. As it is impossible to gauge the quality of appellate counsel's performance without consideration of the appellate work product, we cannot say Mastin has met his burden of proving appellate counsel's

performance was deficient.[3] The absence of evidence on Mastin's ineffective assistance of appellate counsel claim supports the post-conviction court's conclusion Mastin failed to meet his burden of proof.[4] *See Taylor v. State*, 882 N.E.2d 777, 782 (Ind. Ct. App. 2008) (holding petitioner failed to meet his burden of proof on a claim of ineffective assistance of trial counsel by failing to tender the trial transcript to the post-conviction court).

## IV.  Denial of Post-Conviction Evidentiary Hearing Transcripts

[16]  Finally, Mastin contends the post-conviction court erred by denying his request for post-conviction evidentiary hearing transcripts in order to prepare his proposed findings of fact and conclusions of law.  The post-conviction court denied Mastin's motion to compel the transcripts because he was unable to pay for their cost and was not entitled to have them produced at public expense.

---

[3] We note Indiana Rule of Evidence 201(a)(2)(C) permits a court to take judicial notice of "records of a court of this state."  A court "*may* take judicial notice on its own[,]" or it "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Ind. Evidence Rule 201(c) (emphasis added).  Here, the post-conviction court did not exercise its discretion to take judicial notice of Mastin's direct appeal appellant's brief.  Mastin asserts he requested the post-conviction court take judicial notice of all records, including his direct appeal brief; however, a review of his motion reveals he requested the post-conviction court to take judicial notice of its "own records" that are in relation to the "jury/bench trial [that] was conducted by this Court."  Appellant's Appendix at 238.  Therefore, to the extent Mastin asserts his request that the post-conviction court take judicial notice included the records of the Court of Appeals of Indiana, his argument fails.

[4] Mastin attempts to remedy his failure to provide his direct appeal appellant's brief by including it his appendix.  It is clear this brief was not part of the record below; thus, we will not consider it in this appeal.  *See In re D.L.M.*, 725 N.E.2d 981, 983 n.4 (Ind. Ct. App. 2000) (noting "the well-established rule of appellate procedure that our court may not consider evidence outside the record" and declining to consider a report that was included in the appendix but was not part of the record).

Indiana Post-Conviction Rule 1(9)(b) provides, in relevant part, that petitioners who are indigent are "entitled to a record of the post-conviction proceeding at public expense for appeal of the denial or dismissal of the petition." Mastin, however, cites no statute or rule, and we find none, that provides a petitioner with a transcript of the post-conviction proceeding at public expense *before* the denial or dismissal of a petition.[5] Therefore, we conclude that the post-conviction court did not err by denying Mastin's request for transcripts of the evidentiary hearings in order to prepare his proposed findings and conclusions.

# Conclusion

The post-conviction court did not err in concluding Mastin is not entitled to post-conviction relief on his claims he received ineffective assistance of trial and appellate counsel, nor did it err in denying his motion for post-conviction evidentiary hearing transcripts. Accordingly, we affirm.

Affirmed.

Kirsch, J., and Barnes, J., concur.

---

[5] The cases which Mastin cites for support of his argument, *Murray v. Giarratano*, 492 U.S. 1 (1989), *Ross v. Moffitt*, 417 U.S. 600 (1974), *Hardy v. U.S.*, 375 U.S. 277 (1964), *Lane v. Brown*, 372 U.S. 477 (1963), *Lumbert v. Finley*, 735 F.2d 239 (7th Cir. 1984), and *Campbell v. Criterion Group*, 605 N.E.2d 150 (Ind. 1992), are inapplicable to this issue.